UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SIDNEY SANDOZ, Individually and on Behalf of All Others Similarly Situated, | Civil Action No.   1:21-cv-07683 |
| Plaintiff, | CLASS ACTION |
| vs. | COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933 |
| WATERDROP INC., PENG SHEN, KANGPING SHI, NINA ZHOU, KAI HUANG, HAIYANG YU, YAO HU, GUANG YANG, COLLEEN A. DE VRIES, COGENCY GLOBAL INC., GOLDMAN SACHS (ASIA) L.L.C., MORGAN STANLEY & CO. LLC, BOFA SECURITIES, INC., CHINA MERCHANTS SECURITIES (HK) CO., LIMITED, CLSA LIMITED and HAITONG INTERNATIONAL SECURITIES COMPANY LIMITED, | |
| Defendants. | |
| | DEMAND FOR JURY TRIAL |

Plaintiff Sidney Sandoz ("plaintiff"), individually and on behalf of all others similarly situated, by plaintiff's undersigned attorneys, for plaintiff's complaint against defendants, alleges the following based upon personal knowledge as to plaintiff and plaintiff's own acts and upon information and belief as to all other matters based on the investigation conducted by and through plaintiff's attorneys, which included, among other things, a review of U.S. Securities and Exchange Commission ("SEC") filings by Waterdrop Inc. ("Waterdrop" or the "Company"), the Company's press releases, and analyst reports, media reports, and other publicly disclosed reports and information about the Company.  Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a securities class action on behalf of all persons or entities who purchased Waterdrop American Depositary Shares ("ADSs") in or traceable to the Company's May 2021 initial public offering (the "IPO") seeking to pursue remedies under the Securities Act of 1933 (the "1933 Act").

## JURISDICTION AND VENUE

2.      The claims alleged herein arise under §§11 and 15 of the 1933 Act, 15 U.S.C. §§77k and 77o.  This Court has jurisdiction over the subject matter of this action pursuant to §22 of the 1933 Act, 15 U.S.C. §77v.

3.      This Court has personal jurisdiction over each of defendants and venue is proper in this District.  Defendants conducted the IPO in this District, drafted the Registration Statement (defined below) in substantial part in this District, disseminated the statements alleged to be false and misleading herein into this District, and solicited purchasers of Waterdrop ADSs in this District. The Waterdrop ADSs issued in the IPO also trade in this District.

- 1 -

**PARTIES**

4.      Plaintiff Sidney Sandoz purchased Waterdrop ADSs in or traceable to the IPO and has been damaged thereby.

5.      Defendant Waterdrop operates an insurance technology platform and is based in Beijing, China.  The Company's ADSs trade in New York on the New York Stock Exchange ("NYSE") under ticker symbol "WDH."  Each Waterdrop ADS represents ten Class A ordinary shares of the Company.  The Company maintains a dual-class share structure designed to concentrate control over the Company in the hands of Waterdrop insiders out of proportion with their economic stake.  Holders of Class A shares (the shares owned by public investors) are entitled to one vote per share.  By contrast, holders of Class B shares (the shares owned by Company insiders) are entitled to nine votes per share.

6.      Defendant Peng Shen ("Shen") founded Waterdrop and served as Waterdrop's Chief Executive Officer ("CEO") and Chairman at the time of the IPO.  Defendant Shen beneficially owned and controlled approximately 70% of Waterdrop's voting shares through his ownership of Class A and Class B shares at the time of the IPO.  The Registration Statement stated that Waterdrop was a "controlled company" controlled by defendant Shen.

7.      Defendant Kangping Shi served as Waterdrop's Chief Financial Officer ("CFO") at the time of the IPO.

8.      Defendant Nina Zhou served as a Waterdrop director at the time of the IPO.

9.      Defendant Kai Huang served as a Waterdrop director at the time of the IPO.

10.      Defendant Haiyang Yu served as a Waterdrop director at the time of the IPO.

11.      Defendant Yao Hu served as a Waterdrop director at the time of the IPO.

12.      Defendant Guang Yang served as a Waterdrop director at the time of the IPO.

13.     The defendants identified in ¶¶6-12 are referred to herein as the "Individual Defendants."  Each of the Individual Defendants signed the Registration Statement.  In addition, the Individual Defendants participated in the solicitation and sale of Waterdrop ADSs to investors in the IPO for their own benefit and the benefit of Waterdrop as directors, executive officers and/or major shareholders of the Company.

14.     Defendant Colleen A. De Vries ("De Vries") served as Waterdrop's Authorized U.S. Representative at the time of the IPO in her position as the Senior Vice President of defendant Cogency Global Inc.

15.     Defendant Cogency Global Inc. ("Cogency Global") was Waterdrop's Authorized U.S. Representative for purposes of the IPO, and defendant De Vries signed the Registration Statement on her own behalf and on behalf of Cogency Global.  Defendant Cogency Global is additionally liable for the securities law violations alleged herein to have been committed by defendant De Vries as it controlled defendant De Vries at the time of the IPO.

16.     The defendants identified in ¶¶14-15 are referred to herein as the "Cogency Global Defendants."

17.     Defendants Goldman Sachs (Asia) L.L.C., Morgan Stanley & Co. LLC, BofA Securities, Inc., China Merchants Securities (HK) Co., Limited, CLSA Limited and Haitong International Securities Company Limited are referred to herein as the "Underwriter Defendants." Pursuant to the 1933 Act, the Underwriter Defendants are liable for the materially false and misleading statements in the Registration Statement as follows:

(a)     The Underwriter Defendants are investment banking houses that specialize in, *inter alia*, underwriting public offerings of securities.  They served as the underwriters of the IPO and shared over $25 million in fees collectively for their services.  The Underwriter Defendants

determined that in return for their share of the IPO proceeds, they were willing to solicit purchases of Waterdrop ADSs in the IPO.  Each of the Underwriter Defendants designated personnel to the IPO working group, including investment bankers, analysts, associates and counsel, to market Waterdrop ADSs, and those personnel worked on and approved the content of Waterdrop's Registration Statement and other offering materials.

(b)     The Underwriter Defendants demanded and obtained an agreement from Waterdrop that Waterdrop would indemnify and hold the Underwriter Defendants harmless from any liability under the federal securities laws.  They also made certain that Waterdrop had purchased millions of dollars in directors' and officers' liability insurance.

(c)     Representatives of the Underwriter Defendants also assisted Waterdrop and the Individual Defendants in planning the IPO and purportedly conducted an adequate and reasonable investigation into the business and operations of Waterdrop, an undertaking known as a "due diligence" investigation.  The due diligence investigation was required of the Underwriter Defendants in order to engage in the IPO.  During the course of their "due diligence," the Underwriter Defendants had continual access to confidential corporate information concerning Waterdrop's operations and financial prospects.

(d)     In addition to availing themselves of virtually unbridled access to internal corporate documents, agents of the Underwriter Defendants met with Waterdrop's management, top executives, and outside counsel and engaged in "drafting sessions" in advance of the IPO.  During these sessions, understandings were reached as to: (i) the strategy to best accomplish the IPO; (ii) the terms of the IPO, including the price range at which Waterdrop ADSs would be sold; (iii) the language to be used in the Registration Statement; and (iv) what disclosures about Waterdrop would be made in the Registration Statement.  As a result of those constant contacts and communications

between the Underwriter Defendants' representatives and Waterdrop's management and top executives, such as the Individual Defendants, the Underwriter Defendants knew, or should have known, of Waterdrop's existing problems as detailed herein.

(e)     The Underwriter Defendants solicited and sold in the IPO Waterdrop ADSs to plaintiff and other members of the Class.  The Underwriter Defendants' failure to conduct an adequate due diligence investigation was a substantial factor leading to the harm complained of herein.

## SUBSTANTIVE ALLEGATIONS

18.     Based in China, Waterdrop operates an insurance technology platform purportedly focused on providing "a positive social impact."  The Company has historically operated three business segments: (i) an insurance marketplace that matches consumers with health and life insurance products; (ii) medical crowdfunding, which enables people to provide donations to people with significant medical costs; and (iii) mutual aid, which enabled people suffering from over 100 types of critical illness to spread their medical cost burdens.  The Company discontinued its mutual aid segment in March 2021, shortly before the IPO.

19.     Waterdrop earns the vast majority of its revenues from commissions received from insurance companies for insurance products sold on the Waterdrop platform.  The Company does not earn any revenues from its crowdfunding operations, and instead uses its crowdfunding services (and previously its mutual aid services until the segment was discontinued) to generate customer leads and lower its customer acquisition costs.  In recent years, Waterdrop has relied more heavily on third-party traffic channels to expand its consumer base, with such channels increasing from just 1.9% of all customer traffic in 2018 to 44.9% of all customer traffic by 2020.

20.     Leading up to the IPO, Waterdrop claimed that it was experiencing tremendous revenue growth, stating that its total net operating revenue increased by 534.6% from RMB238.1

million in 2018 to RMB1,511.0 million in 2019, and further increased by 100.4% to RMB3,027.9 million (US$464.1 million) in 2020. The Company stated that it had also experienced rapid growth among its consumer base, with the number of consumers using the Waterdrop insurance marketplace increasing nearly eight-fold between 2018 and 2020.

21.     On April 16, 2021, the Company filed with the SEC a registration statement on Form F-1 for the IPO, which, after an amendment, was declared effective on May 6, 2021 (the "Registration Statement"). On May 7, 2021, the Company filed with the SEC a prospectus for the IPO on Form 424B4, which incorporated and formed part of the Registration Statement. The Registration Statement was used to sell to the investing public 30 million Waterdrop ADSs at $12 per ADS. Defendants generated US$360 million in gross offering proceeds from their sale of Waterdrop ADSs in the IPO.

## MATERIALLY FALSE AND MISLEADING STATEMENTS AND OMISSIONS IN THE REGISTRATION STATEMENT

22.     The Registration Statement was negligently prepared and, as a result, contained untrue statements of material fact, omitted material facts necessary to make the statements contained therein not misleading, and failed to make adequate disclosures required under the rules and regulations governing the preparation of such documents.

23.     Specifically, the Registration Statement failed to disclose that Waterdrop was the subject of an intense regulatory investigation and pending crackdown by Chinese authorities because of a variety of market abuses perpetrated by the Company used to artificially inflate Waterdrop's short-term financial results in the lead up to the IPO, including, *inter alia*: (i) operating insurance platforms without proper governmental authorizations; (ii) mispricing risks for consumers; and (iii) illicitly using client information. Indeed, unbeknownst to investors, the reason that Waterdrop had discontinued its mutual aid segment was because it had been ordered to do so by Chinese regulators.

Furthermore, Waterdrop had suffered rapidly accelerating operating losses in the first quarter of 2021 – completed weeks *before* the IPO.

24.    Rather than disclose these adverse facts, the Registration Statement stated that Waterdrop had "achieved exponential growth since [its] inception" and was poised to take advantage of a massive market opportunity among under-insured Chinese communities.  The Registration Statement continued in pertinent part as follows:

> As of December 31, 2018, 2019 and 2020, the cumulative number of paying insurance consumers was approximately 1.7 million, 8.8 million and 19.2 million, while FYP generated through Waterdrop Insurance Marketplace achieved RMB972 million, RMB6,668 million, and RMB14,426 million in 2018, 2019 and 2020, respectively.  We primarily generate brokerage income from selling insurance policies underwritten by insurance carriers.  ***Our revenues increased by 534.6% from RMB238.1 million in 2018 to RMB1,511.0 million in 2019, and further increased by 100.4% to RMB3,027.9 million (US$464.1 million) in 2020.  We had a net loss of RMB209.2 million, RMB321.5 million and RMB663.9 million (US$101.7 million) in 2018, 2019 and 2020, respectively***.

25.    The Registration Statement similarly claimed that the Waterdrop's consumer base had experienced "rapid growth," stating in pertinent part as follows:

> As a result, ***our consumer base experienced rapid growth in our track record period.   The number of consumers on our Waterdrop Insurance Marketplace increased approximately from 1.6 million in 2018 to 7.8 million in 2019 and further to 12.6 million in 2020***.  Aside from these consumers, we also had 3.6 million, 14.0 million and 51.2 million gift insurance policyholders in 2018, 2019 and 2020 who subscribed to insurance policies through us for free as a result of our promotional activities.  These policyholders form a promising base of potential insurance consumers from a user conversion perspective.

26.    Regarding the purportedly "huge and fast-growing market" opportunity facing Waterdrop, the Registration Statement stated in pertinent part as follows:

> ***China has a huge and fast-growing market for healthcare services. According to iResearch report, in 2019, the total healthcare service expenditures in China reached RMB7.0 trillion and is expected to reach RMB11.4 trillion by 2024, representing a CAGR of 10.2%***.  The increase in healthcare service expenditures is mainly driven by factors including the growing and aging population, increasing disposable income, rising demand for quality medical services, and the reform of the medical security system.

27.    The Registration Statement also provided investors with a selective update on Waterdrop's first quarter 2021 results that discussed the Company's "solid business growth" but did not mention the rapid rise in operating losses suffered by the Company during the quarter.  The Registration Statement stated in pertinent part as follows:

**Recent Development**

***We have achieved a solid business growth in the first quarter of 2021.  The FYP generated through Waterdrop Insurance Marketplace reached RMB4,469 million for the first quarter of 2021, demonstrating a 14.4% increase from the fourth quarter of 2020 or a 42.7% increase from the same period of 2020***.

28.    The Registration Statement further highlighted Waterdrop's purportedly "strong commitments" to environmental and social prerogatives and robust corporate governance, but failed to disclose the Company's illicit activities which had drawn the ire of Chinese regulators.  The Registration Statement stated in pertinent part as follows:

**Our Strong Commitments to ESG and CSR**

***We are a company with strong ESG (environmental, social and corporate governance) and CSR (corporate social responsibility) elements***.  We aspire to bring insurance and healthcare service to billions, and ***it is our core value to contribute to the general public and society with a positive impact***.

Our Waterdrop Medical Crowdfunding cumulatively enabled over 1.7 million patients with a large number of critical illness campaigns.  As of December 31, 2020, we helped raise over RMB37 billion cumulatively without charging fundraisers.  Our Waterdrop Charity platform also connects people through social charity campaigns effectively, cumulatively raising RMB846 million as of December 31, 2020 in campaigns responding to natural disasters and the COVID-19 pandemic.

***We also apply our core principle of ESG and CSR to other aspects including governance, employee and environment.   For governance, we established strict code of conduct with firm-wide social and environmental performance trainings, and proper and structured corporate governance framework***.  For employees, we highly value gender equality with female employees accounting for over 40% of our employees.  We also provide supplementary health insurance to all of our employees.  Our environmental efforts significantly promote digitization with substantially 100% digitization for policy contracts, saving approximately 140 million of pages each year.

*Our contribution to the society is highly-recognized by many noticeable awards granted to us each year in connection with ESG and CSR matters. We will continue to dedicate to making social impact together with our business growth.*

29.     In addition, the Registration Statement praised the mutual aid platform as affording a means for "raising health protection awareness among participants who in turn may seek more comprehensive insurance coverage" and falsely claimed that the reason that Waterdrop had ceased its mutual aid business was to "focus on our core businesses and offer enhanced protection to our users."

30.     These statements in ¶¶24-29 were materially false and misleading when made because they failed to disclose the following adverse facts that existed at the time of the IPO:

(a)     that Waterdrop had achieved a substantial portion of its historical revenue growth through illicit means that ran afoul of Chinese rules and regulations governing the insurance industry;

(b)     that Waterdrop had been ordered by the Chinese government to shut down its mutual aid platform because of its failure to comply with Chinese law;

(c)     that Waterdrop was under investigation by regulatory authorities for continued violations of Chinese law;

(d)     that, as a result of (a)-(c) above, there existed a material undisclosed risk and substantial likelihood that Waterdrop would face severe adverse actions by regulatory authorities following the IPO;

(e)     that Waterdrop's operating losses had increased more than *four-fold* in the first quarter of 2021 as a result of the cessation of its mutual aid business and rapidly growing customer acquisition costs; and

(f)     that, as a result of (a)-(e) above, the Registration Statement's representations regarding Waterdrop's historical financial and operational metrics and purported market

- 9 -

opportunities did not accurately reflect the actual business, operations, and financial results and trajectory of the Company in the lead up to the IPO, were materially false and misleading, and lacked a factual basis.

31.     Furthermore, Item 303 of SEC Regulation S-K, 17 C.F.R. §229.303(a)(3)(ii) ("Item 303") required defendants to "[d]escribe any known trends or uncertainties that have had or that the registrant reasonably expects will have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations."  Similarly, Item 105 of SEC Regulation S-K, 17 C.F.R. §229.105 ("Item 105"), required, in the "Risk Factors" section of registration statements and prospectuses, "a discussion of the most significant factors that make an investment in the registrant or offering speculative or risky" and required each risk factor to "adequately describe[] the risk."

32.     The failure of the Registration Statement to disclose that Waterdrop had suffered ballooning losses in the first quarter of 2021, been ordered by the government to cease its mutual aid platform, and violated numerous Chinese laws and regulations governing the insurance industry, making it susceptible to a regulatory crackdown by Chinese authorities, violated Item 303, because these undisclosed facts were known to defendants and would (and did) have an unfavorable impact on the Company's sales, revenues and income from continuing operations.  This failure also violated Item 105, because these adverse facts created significant risks that were not disclosed even though they were some of the most significant factors that made an investment in Waterdrop ADSs speculative or risky.

33.     Indeed, the risk factors that were provided in the Registration Statement were themselves materially misleading because they provided generic statements of potential or contingent risk, yet failed to disclose that the potential future adverse impacts described therein were already occurring.  For example, the Registration Statement stated that "[f]urther development of

- 10 -

regulations applicable to us *may* result in additional restrictions on our business operations," yet failed to disclose that Waterdrop was *already* the subject of a troubling governmental investigation into the Company's business practices and that it had *already* been ordered to shut down its mutual aid business by government authorities.  To the contrary, the Registration Statement misleadingly reassured investors that Waterdrop "will continue to further expedite and streamline our reporting process and develop our compliance process, including establishing a comprehensive accounting policies and procedures manual, to allow early detection, prevention and resolution of potential compliance issues."  The Registration Statement's omission of adverse facts regarding the regulatory environment facing Waterdrop and the Company's illicit business practices and ballooning losses rendered the discussion of possible future contingent risks themselves materially false and misleading.

## EVENTS FOLLOWING THE IPO

34.     On June 17, 2021, Waterdrop issued a press release announcing the Company's financial results for the quarter ended March 31, 2021 – *i.e.*, the quarter conducted *before* the IPO. The Company reported that its operating costs and expenses had ballooned over 75%, or RMB579.1 million, to RMB1,343.9 million (US$205.1 million).  As a result, the Company suffered an operating loss for the quarter of RMB460.6 million (US$70.3 million), compared with operating loss of RMB111.1 million for the same period of 2020 – *a more than four-fold increase*.  This rapid increase in operating expenses was due largely to the cessation of the Company's mutual aid business and growing customer acquisition costs.  The release broke down the rapid rise in Waterdrop's expenses in pertinent part as follows:

> Operating costs and expenses increased by RMB579.1 million, or 75.7%, to RMB1,343.9 million (US$205.1 million) for the first quarter of 2021 from RMB764.9 million for the same period of 2020.

- Operating costs increased by 125.5% year-over-year to RMB300.6 million (US$45.9 million) for the first quarter of 2021, compared with RMB133.3 million for the first quarter of 2020, which was mainly due to (i) the cost of RMB76.8 million that incurred in relation to the cessation of the Waterdrop Mutual Aid business, (ii) RMB30.8 million increase in personnel cost as our consultants and insurance agents team rapidly expanded to support the business growth, and (iii) RMB44.3 million increase in professional and outsourced customer service fees.

- Sales and marketing expenses increased by 67.7% year-over-year to RMB837.2 million (US$127.8 million) for the first quarter of 2021, compared with RMB499.2 million for the first quarter of 2020.  The increase was primarily due to (i) a RMB247.8 million increase in marketing expenses to third-party traffic channels as a result of our business expansion and branding promotions, and (ii) a RMB100.7 million increase in outsourced sales and marketing service fees to third parties.

- General and administrative expenses increased by 87.2% year-over-year to RMB121.3 million (US$18.5 million) for the first quarter of 2021, compared with RMB64.8 million for the first quarter of 2020.  The increase was primarily due to (i) a RMB44.6 million increase in share-based compensation expenses, and (ii) an increase of RMB11.5 million in professional fees and personnel cost.

- Research and development expenses increased by 25.6% year-over-year to RMB84.9 million (US$13.0 million) for the first quarter of 2021, compared with RMB67.6 million for the first quarter of 2020.  The increase was primarily due to a RMB16.2 million increase in research and development personnel cost and related expenses, as our research and development team continued to expand to enhance our competitive capabilities in technology.

35.    On August 11, 2021, multiple news sources reported that China's banking and insurance watchdog, the China Banking and Insurance Regulatory Commission, had issued an order directing insurance companies to cease improper marketing and pricing practices rampant in the industry and enhance their user privacy protections.  Failure to comply would reportedly result in the offenders being "severely punished" by Chinese authorities.

36.    For example, a *Bloomberg* story entitled "China Goes After Online Insurance in Widening Crackdown" stated that the "sweeping order goes beyond the targeted action that's hit a few listed online platforms including Waterdrop Inc. . . . since China began a broad crackdown on its

fintech sector this year." The article confirmed that "[r]egulators have since moved to shutter some operations including mutual aid healthcare platforms operated by Waterdrop." It continued: "The latest move will stymie growth in an industry that had been expected to grow to 2.5 trillion yuan ($385 billion) in a decade." The article continued in pertinent part as follows:

> "In recent years, online insurance has moved into a fast lane. At the same time, transgressions have been rampant," according to the notice, which cited offenses including some internet platforms illegally operating in insurance, mispricing risks or illicitly using client information. It called for "immediate rectification and regulation."

*    *    *

> The overhang presents multiple challenges for Waterdrop, which was one of a few Chinese fintechs to have pulled off an initial public offering this year.

37. On September 8, 2021, Waterdrop issued a press release announcing the Company's financial results for the quarter ended June 30, 2021. The release stated that Waterdrop's operating losses had continued to accelerate, totaling RMB815.4 million (US$126.3 million) for the quarter, compared with an operating profit of RMB7.2 million for the same period of 2020. This was once again due to a sharp increase in the Company's operating costs and expenses, as the Company's operating costs and expenses during the quarter increased by RMB1,081.1 million, or 160.5% year over year, to RMB1,754.7 million (US$271.8 million) from RMB673.6 million for the same period of 2020.

38. On September 13, 2021, Waterdrop ADSs dropped to a low of just $3 per ADS –*75% below* the price at which Waterdrop ADSs were sold to the investing public just four months previously. At the time of the filing of this complaint, the price of Waterdrop ADSs has remained significantly below the IPO price.

**CLASS ACTION ALLEGATIONS**

39.     Plaintiff brings this action as a class action on behalf of all persons or entities who purchased Waterdrop ADSs in or traceable the IPO (the "Class").  Excluded from the Class are defendants and their families, the officers, directors and affiliates of the defendants, at all relevant times, and members of their immediate families, and their legal representatives, heirs, successors, or assigns and any entity in which defendants have or had a controlling interest.

40.     The members of the Class are so numerous that joinder of all members is impracticable.  Waterdrop ADSs are actively traded on the NYSE and millions of ADSs were sold in the IPO.  While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are hundreds of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Waterdrop or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions, including being given an opportunity to exclude themselves from the Class.

41.     Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law as complained of herein.

42.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

43.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether defendants violated the 1933 Act;

(b)      whether statements made by defendants to the investing public in the Registration Statement misrepresented material facts about the business, operations and risks of investing in Waterdrop; and

(c)      to what extent the members of the Class have sustained damages and the proper measure of damages.

44.      A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## COUNT I

### For Violation of §11 of the 1933 Act
### Against All Defendants

45.      Plaintiff repeats and realleges ¶¶1-44 by reference.

46.      This Count is brought pursuant to §11 of the 1933 Act, 15 U.S.C. §77k, on behalf of the Class, against all defendants.

47.      This Count does not sound in fraud.  Plaintiff does not allege that any of the defendants had scienter or fraudulent intent, which are not elements of a §11 claim.

48.      The Registration Statement for the IPO was inaccurate and misleading, contained untrue statements of material fact, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

49.      The defendants named herein were responsible for the contents and dissemination of the Registration Statement as signatories and/or directors of the Company or as the underwriters of the IPO.

50.     Waterdrop is the registrant for the IPO.  As the issuer of the shares, Waterdrop is strictly liable to plaintiff and the Class for the misstatements and omissions.

51.     None of the defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omissions of any material facts and were not misleading.

52.     By reason of the conduct alleged herein, each defendant violated, and/or controlled a person who violated, §11 of the 1933 Act.

53.     Plaintiff purchased Waterdrop ADSs registered pursuant to the Registration Statement and traceable to the IPO.

54.     Plaintiff and the Class have sustained damages.  The value of Waterdrop ADSs has declined substantially subsequent to and due to defendants' violations.

55.     At the time of their purchases of Waterdrop ADSs, plaintiff and other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein.  Less than one year has elapsed from the time that plaintiff discovered or reasonably could have discovered the facts upon which this complaint is based to the time that plaintiff filed this complaint. Less than three years have elapsed between the time that the securities upon which this Count is brought were offered to the public and the time plaintiff filed this complaint.

## COUNT I

**For Violation of §15 of the 1933 Act**
**Against All Defendants Except the Underwriter Defendants**
**and Defendant De Vries**

56.     Plaintiff repeats and realleges ¶¶1-55 by reference.

57.     This Count is brought pursuant to §15 of the 1933 Act against all defendants other than the Underwriter Defendants and defendant De Vries.

58.     The Individual Defendants controlled Waterdrop at the time of the IPO by virtue of their dominant voting power and status as the Company's controlling shareholders, directors and/or senior officers.  The Individual Defendants each had a series of direct and/or indirect business and/or personal relationships with other directors and/or officers and/or major shareholders of Waterdrop.

59.     Defendant Waterdrop controlled the Individual Defendants and all of its employees.

60.     Defendant Cogency Global controlled defendant De Vries and all of its employees, and served as the authorized U.S. representative for the Company.

61.     The defendants named herein each were culpable participants in the violations of §11 of the 1933 Act alleged in the Count above, based on their participation in the Company's reporting on financial and operational results to investors, having signed or authorized the signing of the Registration Statement, selling Waterdrop ADSs in the IPO and/or having otherwise participated in the process that allowed the IPO to be successfully completed.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for relief and judgment as follows:

A.     Determining that this action is a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and plaintiff's counsel as Lead Counsel;

B.     Awarding compensatory damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.     Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.      Awarding such equitable/injunctive or other relief as the Court may deem just and proper, including permitting any putative Class members to exclude themselves by requesting exclusion through noticed procedures.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

DATED:  September 14, 2021            ROBBINS GELLER RUDMAN
                                                    & DOWD LLP
                                                    SAMUEL H. RUDMAN

                                        *s/ Samuel H. Rudman*
                                        SAMUEL H. RUDMAN

                                        58 South Service Road, Suite 200
                                        Melville, NY  11747
                                        Telephone:  631/367-7100
                                        631/367-1173 (fax)
                                        srudman@rgrdlaw.com

                                        ROBBINS GELLER RUDMAN
                                          & DOWD LLP
                                        BRIAN E. COCHRAN
                                        200 South Wacker Drive, 31st Floor
                                        Chicago, IL  60606
                                        Telephone:  312/674-4674
                                        312/674-4676 (fax)
                                        bcochran@rgrdlaw.com

                                        JOHNSON FISTEL, LLP
                                        RALPH M. STONE
                                        1700 Broadway, 41st Floor
                                        New York, NY  10019
                                        Telephone:  212/292-5690
                                        212/292-5680 (fax)
                                        ralphs@johnsonfistel.com

                                        Attorneys for Plaintiff

- 18 -

DocuSign Envelope ID: 3376AA0B-DA76-481C-B395-63730BA8552D

## CERTIFICATION OF PLAINTIFF PURSUANT
## TO THE FEDERAL SECURITIES LAWS

I, Sidney Sandoz, declare the following as to the claims asserted, or to be asserted, under the federal securities laws:

1.      I have reviewed the complaint and authorize its filing.

2.      I did not acquire the securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action or any other litigation under the federal securities laws.

3.      I am willing to serve as a representative party on behalf of the class, including testifying at deposition or trial, if necessary.

4.      I made the following transactions during the Class Period in the securities that are the subject of this action.

**Acquisitions:**

| Date Acquired | Number of Shares Acquired | Acquisition Price Per Share |
|---|---|---|
| 6/17/21 | 100 | $7.70 |
| 7/6/21 | 50 | $6.38 |
| 7/26/21 | 50 | $5.40 |
| 8/6/21 | 100 | $3.45 |

**Sales:**

| Date Sold | Number of Shares Sold | Selling Price Per Share |
|---|---|---|
| 8/16/21 | 300 | $3.56 |

5.      I will not accept any payment for serving as a representative party beyond my pro-rata share of any recovery, except reasonable costs and expenses – such as lost wages and travel expenses – directly related to the class representation, as ordered or approved by the Court pursuant to law.

6.      I have not sought to serve or served as a representative party for a class in an action under the federal securities laws within the past three years, except if detailed below:

DocuSign Envelope ID: 3376AA0B-DA76-481C-B395-637309A8552D

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: 9/9/2021

Sidney Sandoz